# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG, S.A.,<br><br>       Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>       Defendant. | Case No.  1:18-cv-00158-LY<br>           1:18-cv-00159-LY<br>           1:18-cv-00161-LY<br>           1:18-cv-00163-LY<br>           1:18-cv-00164-LY<br>           1:18-cv-00166-LY<br>           1:18-cv-00293-LY |

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>       Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>       Defendant. | Case No.  1:18-cv-00989-LY<br>           1:18-cv-00990-LY<br>           1:18-cv-00991-LY<br>           1:18-cv-00992-LY |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT APPLE INC.'S MOTIONS
TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

        A.      Apple has an extensive presence in Austin, rendering this District a
                convenient location. .................................................................... 2

        B.      Apple's decision to invest $1 billion to build a new campus in Austin
                further demonstrates this District is a convenient forum. ................ 5

        C.      Given Apple's substantial and growing presence here, Austin is a
                reasonable, fair, and convenient venue for each of these eleven national
                infringement actions ..................................................................... 5

        D.      To transfer venue, courts require better facts than Apple provides. ...... 7

II.     LEGAL STANDARD ............................................................................ 8

III.    ARGUMENT ....................................................................................... 9

        A.      PRIVATE FACTORS ................................................................. 9

                1.      Ease of Access to Proof ................................................. 9

                2.      Compulsory Process Over Reluctant Witnesses .................. 11

                3.      Cost of Attendance for Willing Witnesses.......................... 17

                4.      Other Practical Considerations ....................................... 18

        B.      PUBLIC FACTORS ................................................................. 19

                1.      Court Congestion ........................................................ 19

                2.      Local Interest ............................................................ 20

                3.      Familiarity with the Governing Law................................. 20

                4.      Conflicts of Laws ....................................................... 20

IV.     CONCLUSION ................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Cases**

*AGIS Software Dev. LLC v. Apple Inc.*,
 No. 2:17-cv-00516-JRG, 2018 WL 2721826 (E.D. Tex. Jun. 6, 2018)........................... 7, 9, 20

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*,
 228 F.3d 544 (5th Cir. 2000) ............................................................................................ 13

*Clark v. Kellogg Brown & Root, LLC*,
 2008 WL 11357986 (E.D. Tex. Jan. 14, 2008)...................................................................... 14

*ContentGuard Holdings, Inc. v. Amazon.com, Inc. et al.*,
 No. 2:13-cv-1112, 2015 WL 1885256 (E.D. Tex. Apr. 24, 2015) ........................................... 9

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
 No. 6:12-cv-100-LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013) ............................. 15

*e-Watch, Inc. v. Apple Inc.*,
 2016 WL 7338342 (E.D. Tex. Dec. 19, 2016)....................................................................... 13

*Healthpoint, Ltd. v. Derma Sciences, Inc.*,
 939 F. Supp. 2d 680 (W.D. Tex. 2013)............................................................................ 14, 16

*In re Apple Inc.*,
 743 F.3d 1377 (Fed. Cir. 2014).......................................................................................... 15

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ............................................................................................... 9

*In re Volkswagen of America Inc.*,
 545 F. 3d 304 (5th Cir. 2008) ................................................................................. 6, 8, 9, 11

*Mears Techs. v. Finisar*,
 2014 WL 1652603 (E.D. Tex. Apr. 24, 2014)....................................................................... 18

*MicroUnity Sys. Eng'g, Inc. v. Acer, Inc., et al.*,
 No. 2:10-cv-91-TJW, 2011 WL 4591917 (E.D. Tex. Sept. 30, 2011) .................................... 20

*MobileMedia Ideas LLC v. HTC Corp.*,
 No. 2:10-cv-112-JRG, 2012 WL 1570136 (E.D. Tex. May 3, 2012)....................................... 11

*Operating Sys. Sols., LLC v. Apple Inc.*,
 No. 8:11-cv-1754-T, 2012 WL 12906518 (M.D. Fla. Jan. 30, 2012)...................................... 11

*Parthenon Unif. Mem. Arch. LLC v. Apple Inc.*,
 No. 2:15-cv-621, 2016 WL 4196663 (E.D. Tex. Aug. 8, 2016)................................................ 9

*Sabal Limited LP v. Deutsche Bank AG,*
　209 F. Supp. 3d 907 (W.D. Tex. 2016) ......................................................................... 9

*Smartflash LLC v. Apple Inc.,*
　No. 6:13-cv-447, 2015 WL 11071873 (E.D. Tex. Apr. 4, 2014) ................................. 9, 13, 14

*Stewart Org., Inc. v. Ricoh Corp.,*
　487 U.S. 22 (1988) ........................................................................................................ 16

*TC Heartland LLC v. Kraft Foods Group Brands LLC,*
　137 S. Ct. 1514 (2017) .................................................................................................. 5

*TracBeam, LLC v. Apple Inc.,*
　No. 6:14-cv-680, 2015 WL 5786449 (E.D. Tex. Sept. 29, 2015) ................................. 9

*VirtualAgility, Inc. v. Salesforce.com, Inc.,*
　2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ................................................................. 13

*Virtualagility, Inc. v. Salesforce.com, Inc.,*
　No. 2:13-cv-00011-JRG, 2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ........................ 11

**Statutes**

28 U.S.C. § 1400(b) ............................................................................................................. 5

28 U.S.C. § 1404(a) ............................................................................................................. 1

iii

Plaintiffs, Uniloc 2017 LLC, Uniloc USA, Inc., and Uniloc Luxembourg, S.A. (collectively, "Uniloc")[1], respectfully submit this combined Opposition to the Motions of Defendant, Apple Inc. ("Apple"), to transfer venue to the Northern District of California ("NDCA"), under 28 U.S.C. § 1404(a) ("Mots." or "Motions").[2]  For the reasons set forth below, the Motions should be denied.

## I.    INTRODUCTION

These are patent infringement actions. The accused products are manufactured either here in Austin (Mac Pro) or in Asia, for importation. None are manufactured in the Northern District of California. Whether manufactured in Austin or Asia, all the accused products are sold nationwide, with over a million sold in Texas during the past year.  Apple infringes the patents by its Austin manufacture of some of the products, by its importation of the rest, by selling the products nationwide, and by providing customer support for the infringing use of the products by end-users, much of which support is provided from its massive facilities here in the Austin area.

This is not a trade secrets action. It does not matter where Apple "developed" or "designed" its infringing products, or who participated, or how they did it.  As to infringement, the only issue for trial will simply be "what does the product do?"  And as to that, any factual issues will be settled by software inspection at the offices of Apple's counsel - in Austin.

---

[1]  After the first seven actions were filed, Uniloc Luxembourg assigned the patents involved in those actions to Uniloc 2017 LLC. Neither Uniloc Luxembourg nor Uniloc USA any longer has an interest in those patents or those actions. Plaintiffs in those actions will file a motion under Rule 25(c) to substitute Uniloc 2017.

[2]  Apple filed two combined motions to transfer, one directed to the seven earlier filed actions and the other directed to the four later filed actions. To avoid potential confusion, Uniloc files this combined Opposition, with the caveat that motions to transfer must be decided on an "individualized, case-by-case" basis, a requirement Apple ignores. *Healthpoint, Ltd. v. Derma Sciences, Inc.*, 939 F. Supp. 2d 680, 684 (W.D. Tex. 2013) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

These motions have nothing to do with "convenience." Apple did not file these motions to save money on airfare, or because the traffic in the Bay Area is lighter than in Austin – or even to be able to subpoena reluctant witnesses for trial. Rather, in patent infringement cases filed against it in Texas, Apple consistently moves to change venue to the location of its corporate headquarters. And there is no mystery as to why: Apple has been whacked by Texas juries.

As will be discussed below, the Western District of Texas is a reasonable, fair, and convenient venue for these eleven *national* infringement actions. Given Apple's enormous presence in the District, it should reasonably expect to defend suits here. And nothing about this District would seem to give Uniloc an unfair advantage.

**A.    Apple has an extensive presence in Austin, rendering this District a convenient location.**

Although it argues this District is not convenient, Apple chose to establish and maintain extensive and "very critical" facilities here in Austin.  Among its locations here is a "massive" 1.1 million-square-foot campus in North Austin, as well as a smaller 216,000 square foot campus in southwest Austin. *See* Ex. A, p. 1.[3]  Apple has more than 6,000 employees at the Austin facilities. *See id.* Exs. A, p. 1 & B, p. 1.  According to Apple's Senior Vice President of Hardware Technologies, the Austin employees "play a very critical and integral role – they are designing chips that go into all the devices we sell." *See* Ex. A, p. 1.

Although acknowledging its Mac Pro products are accused of infringing (Mot. at 3), Apple does not disclose those products have been assembled for it by Flextronics, located in Austin. *See* Ex. C (Christie Tr.) at 30:4-13; *see also* Ex. D.  A "broad range of functions

---

[3]  Unless otherwise noted, all exhibits referenced here are attached to the accompanying declaration of Kevin Gannon.

2

including engineering, R&D, operations, finance, sales and customer support" are performed at Apple's Austin campus. *See* Ex. C (Christie Tr.) at 131:13-23. Likewise, revenue reporting, collections, accounts payable, payroll, compensation services and royalties "***for all of Apple***" are handled by personnel at Apple's Parmer Lane facility in Austin. *Id.* at 133:20-134:10 (emphasis added). Customer support for a broad range, if not all, of Apple's accused iOS and Mac products is also provided from the Parmer Lane facility. *See* Ex. E (Nash Tr.) at 59:15-60:21; 101:4-102:5.

"[T]he hardware engineering center in Austin may be the most important in Apple's expansion." Ex. A, p. 1. Chips designed by Apple in Austin "are included in 'hundreds of millions of devices' that Apple sells each year." *Id.* These include "the company's 'A'-series processors as well as other components for the iPhone and iPad" that are accused of infringement in these cases. *Id.* Apple's Austin campus "is responsible for running the company's business operations for the entire Western Hemisphere." *See* Ex. D, p. 3 of 7.

In reality, Austin is Apple's "base for microchip design." *See* Ex. A, p. 1. Apple employees in Austin "are hard at work on some of Apple's most important products." *Id.* Apple aims to become "the second-largest technology employer in central Texas, behind only Dell, Inc." *See* Ex. D, p. 3 of 7. Apple's 6000 Austin employees include at least 500 engineers who "work on the chips that will run the next round of Apple's products." *See* Ex. F, p. 1.

Other employees here "continuously update" software that is "integral to iPhones and iPads," which are accused products in these cases. *See id.* At Apple's "sparkling new complex in northwest Austin, workers who are spread throughout seven limestone-and-glass buildings field about 8,000 customer tech support calls a day." *Id.* Those field calls would presumably include technical instruction to customers to operate functionalities that infringe the patents in suit.

3

Other of Apple's Austin employees "manage the company's vast network of suppliers and figure out how to move around millions of iPhones a week to ensure they get into the hands of customers when they want them," *id.*, an issue relevant to the issue of sales of the infringing products.

Apple has publicly announced that, excluding benefits and stock compensation, the average salary of its Austin employees, including management, is $77,000 a year. *Id.* at 2. Thus, with over 6000 employees, Apple's annual Austin payroll exceeds $460 million. In furtherance of its decision to create its second largest facility in the Austin Division, Apple is receiving $35 million in tax incentives from the local city, county, and state governments. *See* Ex. A, p. 1. According to its Chief Executive Officer, Apple's team in Austin "is a ***very critical*** part of [the] company." Ex. G, p. 1 (emphasis added).

In addition to the people on its payroll in Austin, Apple has 350 suppliers of iPhone and iPad components in Texas. *See* Ex. F, p. 3. Apple partners with these companies in Texas to source materials and components for its products. These include Samsung, which has provided iPhone chips from its Austin factory for inclusion in Apple's accused infringing products. *See* Ex. H, p. 2. Apple's CEO has recently also announced that the FaceID module on the iPhone X will be built in Texas. *See* Ex. I, p. 2. Apple also contracts with numerous other local suppliers, *see infra*, including an Austin company, Flextronics, for the assembly of its Mac Pro computers in this Division. *See* Ex. F, p. 3. In addition, according to Apple's Declarant, Apple has two retail establishments in Austin, as well as two in San Antonio, and one in El Paso, all in this District. *See* Jaynes Decl. (Dkt. No. 24-1), ¶ 22.[4] Having enjoyed the considerable benefits of doing business in this District for years, Apple should not be heard to complain that litigating

---

[4] Unless otherwise noted, all docket entries are filings in the above-captioned -989 case.

these cases here is unreasonable, unfair, or clearly less convenient than in the NDCA.

**B.      Apple's decision to invest $1 billion to build a new campus in Austin further demonstrates this District is a convenient forum.**

Apple's claims of inconvenience are belied by its decision to build a new $1 billion campus facility in North Austin. *See* Ex. J (Apple Press Release).  Even before such construction begins, "Austin already represents the largest population of Apple employees outside [its headquarters in] Cupertino [California]." *Id.* at 3.  In its Press Release, Apple's Chief Executive Officer touts Apple's desire to expand in Austin where it has done business for 25 years:

> Apple is proud to bring new investment, jobs and opportunity to cities across the United States and to significantly deepen our quarter-century partnership with the city and people of Austin.

*Id.* at 2.  The new North Austin campus is expected to initially employ an additional 5,000 personnel, with this number growing to 15,000. *Id.* at 3.  Moreover, the jobs "will include a broad range of functions including engineering, R&D operations, finance, sales and customer support." *Id.*  This expansion is "expected to make Apple the largest employer in Austin."

Surely, it is convenient for Austin's soon-to-be largest employer to defend patent actions in this Court.

**C.      Given Apple's substantial and growing presence here, Austin is a reasonable, fair, and convenient venue for each of these eleven national infringement actions.**

The Supreme Court has recently sharply limited the venues in which a patent action may be filed, *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), requiring filing in either the defendant's state of incorporation, or in a district in which it has an established place of business and has committed acts of infringement, as required by 28 U.S.C. § 1400(b).  Apple does not dispute Uniloc properly brought these actions in this District or in the Austin Division.  As discussed above, Apple has large "brick-and-mortar" business

establishments in this area, and an enormous Austin workforce.  Further, the number of accused acts of infringement that have occurred or will occur in this District will reach the millions.  Nor does Apple suggest Uniloc's filing of these cases here in Austin creates economic pressure on Apple or gives Uniloc unfair advantage.  Thus, on its face, Austin is a reasonable, convenient, and fair location for Apple to defend each of these national patent infringement actions.

Nonetheless, Apple moves to change venue under the "convenience" statute, 28 U.S.C. § 1404(a), claiming that Apple finds this District *inconvenient*.  According to Apple, the only location sufficiently *convenient* for Apple would be a courthouse in the NDCA located near its corporate headquarters in Cupertino, California.  But this is not a "local" action, such as the seminal case, *In re Volkswagen of America Inc.*, 545 F. 3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  In that case, the witnesses to a Dallas traffic accident all resided in and around Dallas. *Id.* at 307-08.  Such "local" actions are the types of cases to which Congress primarily directed § 1404(a), when it passed that statute in 1948 to eliminate the doctrine of *forum non convenience* in the federal courts.

By contrast, the actions here are not "local," either as to California or Texas.  They are patent infringement actions as to products either manufactured in Austin or imported, not from California, but from Asia.  The products are sold by Apple nationwide over the Internet as well as in a vast number of Apple retail outlets throughout the United States.  Although the imported products are assembled in Asia, the accused products incorporate parts that are manufactured in various locations in the United States, including in and around Austin.

The issue here, for Apple, is obviously not convenience, as it has spent more money preparing these venue motions than it would spend flying a witness from California to testify at

trial.[5]  The issue is Apple's perceived home-court advantage in the NDCA and its desire to avoid

Texas courts and juries, at all costs.  For example, in Apple's ongoing litigation with VirnetX,

Inc. ("VirnetX") in the Eastern District, the jury found in 2016 that Apple infringed two VirnetX

patents and awarded $302,000,000 in damages. *See* Ex. K.  The court then awarded VirnetX a

further $41,000,000 in enhanced damages due to Apple's willfulness. *See* Ex. L at p. 50 of 58.

On January 15, 2019, the Federal Circuit affirmed both awards. *See* Ex. M.  In a subsequent trial

in 2018 involving newer Apple products, a jury awarded VirnetX $502,000,000 in damages and

found Apple's infringement was willful. *See* Exs. N, O.  Hence, Apple's aversion to litigating

here, notwithstanding its desire to do a significant amount of its business in this District.

As Apple's presence in Texas – especially in Austin and elsewhere in this District – has

now mushroomed to the point where Apple predicts it will soon be the largest employer in

Austin, Apple cannot legitimately deny this District is convenient. Nor can it be allowed

unilaterally to decide where it can be sued.

> **D.**      **To transfer venue, courts require better facts than Apple provides.**

Due to Apple's position in the industries in which it is the market leader, it has been, and

will continue to be, a defendant in numerous patent infringement litigations around the United

States.  In response, Apple has developed a legal strategy, as exemplified in these motions, to

steer all of those actions to the NDCA.  In each case, such as here (Mot. at 1-2), Apple provides a

declaration giving the names of specific employees working in its Cupertino headquarters and

averring those employees are "knowledgeable about the relevant design and operation of the

Accused Products, including their research and development."  *See*, *e.g.*, Jaynes Decl. (Dkt. No.

---

[5]  Apple recently conceded in a prior case, where its motion to transfer was denied that only "one
or two" of its employees "might" testify at trial in a patent case. *See AGIS Software Dev. LLC v.
Apple Inc.*, No. 2:17-cv-00516-JRG, 2018 WL 2721826, at *5 (E.D. Tex. Jun. 6, 2018).

24-1), ¶ 19.

Knowledgeable Apple employees elsewhere, including those thousands of Apple employees in Austin, are dismissed as not having "unique"[6] knowledge.  Following the Apple playbook, Apple employee Jaynes states:

> Apple has non-retail offices in Austin, Texas (the Western District of Texas) and Dallas, Texas (the Northern District of Texas).  ***To the best of my knowledge*** and after reasonable investigation, no employees in these offices ***currently*** have responsibilities for the design, development or implementation of the Accused Technology based on Apple's current understanding of Uniloc's infringement contentions or are likely to have ***unique documents or information relevant to this case***.

*See id.* at ¶ 23 (emphasis added).

But if all a defendant needs to persuade a court to transfer a *national* infringement action out of Texas is to say it has documents and knowledgeable employees at its out-of-state headquarters, then *every* corporate defendant headquartered outside Texas will play the same "get out of Texas free" card. As no one's presence in Austin is larger than Apple's, they will argue if Apple can get away with that ploy, so should they.

As Judge Gilstrap recently stated, Apple's argument, if accepted, would result in a "patently absurd result."  *See* Ex. P at 12 (citations omitted).

## II.   LEGAL STANDARD

That Apple has a massive presence in Austin does not mean *every* action against Apple can be located here. There will admittedly be cases where the relationship of another district to the facts of the particular action are so strong that transfer is clearly called for. The seminal "*Volkswagen II*" presents an excellent example. That action was transferred to the Dallas

---

[6]  Of course, sources of proof in this District do not have to be "unique" to be considered in the transfer analysis. *See*, *e.g.*, *Healthpoint v. Derma Sciences*, 939 F. Supp. 2d at 691.

division because the traffic accident that gave rise to the action occurred in Dallas, and the various witnesses were Dallas residents.

But to invoke Section 1404(a), Apple must demonstrate the NDCA is "clearly more convenient" than Austin. Given Apple's extensive presence in this District, that would be hard to do.

For the sake of brevity, Uniloc will not repeat the public and private factors relevant to deciding a Section 1404(a), which are set forth in *In re Volkswagen* AG, 371 F.3d 201, 203 (5th Cir. 2004), and addressed *seriatim* below.[7]  Uniloc notes, however, no single factor is dispositive. *See Volkswagen II* at 314-15.[8]

## III.  ARGUMENT

As set forth below, Apple has not met its burden of proving the NDCA is "clearly more convenient" and the Motion should be denied. *Volkswagen II*, 545 F.3d at 315.

### A.  PRIVATE FACTORS

#### 1.  Ease of Access to Proof

<u>Documents</u>

As it has in other motions that it files to transfer, Apple argues transfer is warranted because all of its relevant "documents" are located at its headquarters in the NDCA.[9]  As the

---

[7]  Uniloc does not dispute that these cases could have been filed in the NDCA.

[8]  In its Legal Standard section, citing *Volkswagen II*, 545 F.3d at 314-15, Apple states "plaintiff's choice of venue is not a distinct factor in the [transfer] analysis." Mot. at 7, n. 6. Nonetheless, when a forum selection clause is not involved, courts must give "some weight to the plaintiff's choice of forum." *Sabal Limited LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 916 (W.D. Tex. 2016).

[9]  Apple's motions to transfer are frequently denied in the Eastern District. *See*, *e.g. AGIS v. Apple*, 2018 WL 2721826; *Parthenon Unif. Mem. Arch. LLC v. Apple Inc.*, No. 2:15-cv-621, 2016 WL 4196663 (E.D. Tex. Aug. 8, 2016); *TracBeam, LLC v. Apple Inc.*, No. 6:14-cv-680, 2015 WL 5786449 (E.D. Tex. Sept. 29, 2015); *ContentGuard Holdings, Inc. v. Amazon.com, Inc. et al.*, No. 2:13-cv-1112, 2015 WL 1885256 (E.D. Tex. Apr. 24, 2015); *Smartflash LLC v. Apple*

accompanying Foster Declaration (¶ 3-5) proves, however, in its other suits with Uniloc, after making the identical argument, Apple ended up producing zero "documents" or electronically stored information in NDCA. All productions were electronically produced from the offices of Apple's counsel (in Chicago and Denver) to the office of Uniloc's counsel (in Boston).

The world has changed from the time, many years ago, when hard copy documents were common. In present day patent cases in this industry, virtually no party produces hard copy documents, and the location of servers has zero relationship to convenience. Foster Decl., ¶ 3.

Apple also argues several third party potential witnesses reside in the NDCA, and they might have documents. But as with Apple itself, third-party productions in the actions on these and related patents have uniformly occurred electronically. Foster Decl., ¶ 5.

In these types of actions, as the courts now readily recognize, where documents are located (whatever that means) has become irrelevant to the convenience of the parties.

<u>Software</u>

But software can be an exception to the above, because defendants – including Apple – will not transmit it electronically. Rather, they insist that a plaintiff inspect the software at a physical location under defendant's control on a freestanding computer maintained by the defendant.

But that does not help Apple here, because its practice has been to insist on producing its source code for inspection at the office of its litigation counsel (currently Austin, in these cases). In previous Uniloc/Apple actions, Apple insisted on producing its source code in Chicago (and Denver), even refusing Uniloc's request to conduct the inspection at Apple's headquarters in

---

*Inc.*, No. 6:13-cv-447, 2015 WL 11071873 (E.D. Tex. Apr. 4, 2014). In this Western District, because of Apple's massive presence, the same arguments Apple makes in the Eastern District are proportionally weaker here.

Cupertino. *See* Foster Decl., ¶ 6-8.[10]

## 2.    Compulsory Process Over Reluctant Witnesses

This factor requires consideration of the availability of compulsory process over witnesses "whose attendance may need to be secured by a court order." *Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (citing *Volkswagen II*, 545 F.3d at 316).  Nonetheless, "[w]here the party seeking transfer 'only vaguely refer[s] to potential witnesses,' transfer is not warranted." *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-JRG, 2012 WL 1570136, at *5 (E.D. Tex. May 3, 2012) (citation omitted).

Party Witnesses

The location of party witnesses – in these national patent infringement actions – is largely irrelevant to the convenience analysis. The Uniloc party witnesses will readily show up in either district, uncomplainingly, and are privileged to do so. But Apple has a different attitude, seemingly finding travel to this Court to be a bother.

Apple lists some of its own employees as California witnesses. Their ostensible relevance is they participated in "research, development, or design" of some of the accused products. But this is not a trade secrets case. Uniloc does not care – and will not be introducing evidence as to – who did the research, development, or design of the products, or where they did it, or how. Those facts are not relevant to infringement. The issue at trial will simply be "what does the

---

[10]  In actions not involving Uniloc, Apple also produces source code for inspection at offices located far from the NDCA. *See, e.g.*, *Operating Sys. Sols., LLC v. Apple Inc.*, No. 8:11-cv-1754-T, 2012 WL 12906518, at *3 (M.D. Fla. Jan. 30, 2012) ("Apple explicitly designated New York as the location for discovery of the source code for its software.")  Accordingly, it cannot be inconvenient for Apple to bring its source code to trial in this Court, closer to the NDCA than New York, particularly when it can be downloaded at Apple's own (presumably secure) facilities in Austin.

product do?" and the products are widely and publicly available for that purpose in Austin.

Uniloc expects that any factual issues as to what the products do will be resolved by an

examination of Apple's source code, which, per Apple's insistence, will take place at the office

of its litigation counsel – presently, in Austin.

But if Apple wants to call as a witness one of its California employees in a particular

action, it seems cheeky if not arrogant to ask the Court to transfer that action to the NDCA –

delaying it for several months – simply because that employee would find it *inconvenient* to fly

to Austin. As discussed above, there are thousands of Apple employees currently working in

Austin. Flying here is no big deal.

Third Party Witnesses

Third-party witnesses are of more relevance. But a word of caution – parties to venue

motions routinely pad their briefs with lists of "potential" witnesses, few of whom ever appear at

trial. In these eleven actions, the practice is worse because there is very little overlap between the

actions, and thus a potential witness in one of the eleven actions may have no relevance to any

other action. As will be seen, the problem for Apple is that for most of the eleven actions, there

are *no* third-party witnesses with any realistic possibility of testifying live.

Inventors

The first category is inventors. In arguing venue motions, parties regularly point to the

location of the named inventors as relevant. That is because, in many cases, the patent holder

may call an inventor, as a favorable witness, particularly if he is still employed by the patent

holder. So inventors do testify live.

But compulsory process is another matter. For obvious reasons, the inventor is not called

by the accused infringer, unless evidence had developed during the case that the inventor did

3140301.v1

something improper. And in those cases, the inventor is always deposed, and the deposition can be used at trial.

So Apple's speculative argument that a particular case might be the one in 30 where a defendant might need compulsory process to force a reluctant inventor to appear at trial is, absent some supporting evidence, somewhat far-fetched.

But of the 18 inventors on the patents in these eleven actions, Apple identifies only five as Californians: Griffiths (the -990 action), Sidhu (-989)), Homeier and Tripathi (-992), and Lin (-166). Mot. at 10. Seven of the eleven actions have *no* California inventors - none. And in those cases Apple ignores the other 13 inventors named on the patents, who are listed as residing in Illinois, the United Kingdom, Germany, and France, all of which are closer to this Court than they are to the NDCA. (Even in the four actions with at least one California inventor, Apple gives no reason why the inventor's testimony cannot be taken via deposition).

Courts have nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of their residence or workplace pursuant to Fed. R. Civ. P. 45 (a)(2) and (c)(1). "The Fifth Circuit views a videotape deposition as an acceptable substitute for live testimony." *e-Watch, Inc. v. Apple Inc.*, 2016 WL 7338342, at *3 (E.D. Tex. Dec. 19, 2016) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000)); *see also VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014).

As in other litigation, Apple does not attempt to show why deposition testimony would not suffice. *See*, *e.g.*, *Smartflash v. Apple*, 2014 WL 11071873, at *8 ("Apple has not addressed how it would be prejudiced by presenting depositions instead of live testimony for these

13

witnesses")[11]; *see also Healthpoint v. Derma Sciences*, 939 F. Supp. 2d at 692 ("to the extent that these witnesses may provide relevant evidence, [defendant] has not suggested that such evidence could not be obtained through videotaped depositions"). When defendants "have failed to announce a desire to have these witnesses testify in person," they have failed to prove this factor favors transfer. *Clark v. Kellogg Brown & Root, LLC*, 2008 WL 11357986, at *2 (E.D. Tex. Jan. 14, 2008). Thus, Apple has failed to demonstrate that compulsory process will be required with respect to these witnesses. Thus, the location of the inventors, to the extent even relevant, weighs against transfer, particularly in the seven actions which have no such connection with California.

Prosecuting attorneys

Particularly desperate is Apple's listing as potential witnesses three "prosecuting attorneys" of the patents in but one (-166) of the eleven actions, ignoring that none of the prosecuting attorneys of the patents in the other ten actions have any relation to California. In any event, it is a safe bet that no party will call a prosecuting attorney of a patent as a witness. In the one case in 100 where that would happen, that attorney would surely have been deposed first.

Suppliers

The final category of third-party witnesses, and a particularly lame one, is suppliers. Why would Apple call one of its suppliers as a witness at trial? To testify as to what? And wouldn't the supplier appear voluntarily, at Apple's request?

If a party – either Apple or Uniloc – needs information from a supplier (and cannot get it voluntarily), that party will subpoena that information well before trial. And if that party needs the supplier's testimony, it will obtain it by deposition.

---

[11]  As the Court also stated in *Smartflash*, deposing California-based third-parties in California, where Apple is headquartered, "should not be inconvenient for Apple." *Id.*, at *7.

But if we consider suppliers as potential witnesses – and we should not – Apple also ignores the plethora of companies in Texas that supply Apple with parts and services used in the accused products.  These third-party potential witnesses include the assembler of the accused Mac Pro products - Flextronics in Austin. *See* Ex. F, p. 3.  In addition, Apple has 350 suppliers of iPhone and iPad components in Texas. *Id.*  These include Samsung, which has provided chips from its Austin factory for inclusion in Apple's accused infringing products. *See supra*.  Other third-party component suppliers to Apple who will have relevant documentation and are located in or around this District include: NXP (Austin), Qorvo (Richardson), Synopsis (Plano), ST (Coppell), Cirrus Logic (Austin) and Texas Instruments (Dallas). *See* Exs. FF-KK.  Accordingly, this factor, if even relevant, weighs strongly against transfer.

Two of Apple's listed potential third-party witnesses are its suppliers Qualcomm and Intel. See Mot. at 13.  Notably, as in other cases where Apple has moved to transfer, Apple does not identify any individual at either of those companies.  Thus, as in prior Apple litigation, such potential sources of evidence must be discounted.

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-LED-JDL, 2013 WL 682849, at *4 (E.D. Tex. Feb. 22, 2013) ("the court" cannot weight this factor without identification of those individuals. As the Federal Circuit denied Apple's ensuing petition for *mandamus, see In re Apple Inc.*, 743 F.3d 1377, 1378-89 (Fed. Cir. 2014) (noting Apple's failure to identify witnesses), Apple's argument regarding unnamed potential witnesses from Qualcomm and Intel should likewise be rejected here.

Summary

A national patent infringement case differs sharply from an automobile accident case, such as *Volkswagen*, where the jury benefits from live eyewitness testimony. In patent

infringement cases such as these, it is almost impossible to identify a reluctant witness where compulsory process to assure live testimony is required. Here, Apple has not identified such a witness in any of the eleven cases.

On pages 12-13 of its brief, Apple provides a chart showing the location of potential witnesses ostensibly having relevant knowledge. This attempt to aggregate the witnesses from eleven cases to make the NDCA appear more convenient is improper. *See Healthpoint, Ltd. v. Derma Sciences, Inc.*, 939 F. Supp. 2d 680, 684 (W.D. Tex. 2013) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (motions to transfer must be decided on an "individualized, case-by-case" basis). In any event, were the Court tempted to view the eleven cases as a whole, the lineup weighs against transfer, as follows:

| Case No. | Patent | Inventor Locations | Original Named Assignee Locations | Patent Attorney Locations |
|---|---|---|---|---|
| -992 | 8,539,552 | Grabelsky (Illinois)  Tripathi (California)  Homeier (California) Wang (California) | Hewlett-Packard (Houston, TX) | (McDonnell Law, Illinois)  (H-P Legal, Texas) (Van Cott Law, Utah)  (Mannava Law Virginia) |
| -991 | 7,020,252 | Rankin (Horley, UK) | Philips Elec. NV (Eindhoven, Holland) | (Philips Legal, New York)  (Cardinal Law, (Illinois) |
| -990 | 7,136,999 | Griffiths (California) | Philips Elec. NV (Eindhoven, Holland) | L. Liberchuk (Philips Legal, New York)  D. Halajian (Thorne & Halajian, New York) |
| -989 | 6,856,616 | Schuster (Illinois)  Sidhu (California)  Bezaitis (Illinois)  Gentles (Illinois) | 3Com Corp. (Massachusetts) | (McDonnell Law, Illinois)  (H-P Legal, Colorado) |
| -158 | 6,868,079 | Hunt (Redhill, UK) | Philips Elec. NV (Eindhoven, Holland) | D. Halajian (Philips Legal, New York) F. Keegan T. Spinelli (Scully, Scott, New York) |
| -159 | 7,587,207 | Davies (Horley, UK) Dooley (Reigate, UK) | IPG Elecs. (Guernsey, UK) | M. Marion. M. Scattoro, L. Liberchuk )Phillips Legal New York) E. Kramer (Kramer & Amado, Virgina) |

16

| Case No. | Patent | Inventor Locations | Original Named Assignee Locations | Patent Attorney Locations |
|---|---|---|---|---|
| -161 | 7,167,487 | Herrmann (Aachen, Germany) | Philips Elec. NV (Eindhoven, Holland) | M. Marion, T. Onka (Phillips Legal, New York) |
| -163 | 7,020,106 | Barnard (Redhill, UK)<br><br>Moulsley (Caterham, UK)<br>Hunt (Redhill, UK) | Philips Elec. NV (Eindhoven, Holland) | J. Slobod (Phillips Legal, New York)<br>D. Halajian (Thorne & Halajian, New York) |
| -164 | 6,993,049 | Davies (Horley, UK) | Philips Elec. NV (Eindhoven, Holland) | M. Marion, E. Bram (Phillips Legal, New York)<br>K. Springer (Volentine, Francos, Virginia) |
| -166 | 7,969,925<br>8,018,877<br>8,369,298<br>8,406,116 | Lin (California)<br>Lin (California)<br>Lin (California)<br>Lin (California) | Lin (California)<br>Lin (California)<br>Pendragon (Washington)<br>Pendragon (Washington) |  |
| -293 | 6,836,654 | Decotigne (Le Mans, France) | Philips Elec. NV (Eindhoven, Holland) | M. Marion (Phillips Legal, New York)<br>D. Harris, F. Nicholas (Cardinal Law, Illinois) |

*See* Exs. Q-CC.  Of these potential third-party witnesses, the overwhelming majority are located outside California and closer to this Court than to the NDCA. But seven of the eleven actions have *no* California connection.

### 3.    Cost of Attendance for Willing Witnesses

As discussed above, there will likely be no live testimony at trial from any third party witness, in any of the eleven cases.

But if the Court wants to consider that factor, for whatever it is worth, Uniloc has identified numerous third parties in and around this District, *e.g.*, Samsung, Flextronics, and other Apple suppliers for which trial in this Court would be much more convenient and cheaper than attending trial in the NDCA.  And as set forth in the chart set forth above, the locations of the great majority of the inventors, original assignees, and patent attorneys for these cases are closer to this Court than to the NDCA.  Thus, this factor, if considered at all, weighs against transfer.

As for Apple's employee witnesses, the cost of having a couple of its employees attend trial in this Court in each of these cases is negligible to Apple.  The cost of food and lodging for

trial is "substantially less" in Texas than in the NDCA. *See*, *e.g.*, *Mears Techs. v. Finisar*, 2014 WL 1652603, at *3 (E.D. Tex. Apr. 24, 2014).[12]  As of September 30, 2018, Apple had over $44 billion in cash and equivalents into which it can dip to pay for flights and a few days of meals and lodging during trial in Austin. *See* Ex. DD.  As Apple employees, including executives, routinely travel between its headquarters in the NDCA and its second headquarters in Austin, travel to Texas for Apple is cheap and routine, not inconvenient.  Thus, Apple has not shown that this factor clearly favors transfer.

### 4.    Other Practical Considerations

Apple argues judicial economy would be served by transfer because last year Judge Gilstrap transferred ten *Uniloc v. Apple* cases to the NDCA. Mot. at 17-18.  But Apple left out one important fact, and it is a doozy – NONE OF THOSE CASES ARE ACTIVE! (Foster Decl., ¶ 13). One has been dismissed, without prejudice. A second was dismissed, but is on appeal. And the other eight have all been stayed, because of inter partes review proceedings before the Patent Trial and Appeal Board. So none of the "judicial economy" benefits Apple claims in its December 21 brief (such as "overlap in discovery and evidence") would actually occur.

But Uniloc and Apple know, from that experience, what will happen if this Court grants the motion to transfer as to any of the eleven actions. The NDCA has 14 active judges and the clerk will randomly assign to individual judges whichever of the eleven cases this Court transfers. (Foster Decl., ¶ 10).  Each case may end up before a different judge, and, with 14 judges to choose from, that is a distinct possibility. And after the cases are assigned, the practice

---

[12]  Alternatively, Apple could have "one or two" of the thousands of employees, that include engineers and finance personnel, at its facilities here in Austin testify at trial with no travel required.

of the judges in that district is not to transfer a patent case to a different judge simply because the parties are the same, if the patents are different. (Foster Decl., ¶ 11). So the actions will stay assigned to different judges, unless Uniloc and Apple can reach agreement to consolidate two or more actions.

By contrast, currently the eleven actions are all before the same judge. In terms of judicial economy, the contrast is striking.

Apple glibly refers to the eleven actions as "related" to the (now) inactive NDCA cases, but for most of these eleven actions, that cannot plausibly be argued, because the NDCA judges will not buy it. It its December 21 brief, Apple could cite only one of these eleven actions in which there was any relationship – however remote – between the patent being asserted here (the patent in the -989 action) and a patent involved in the eight stayed actions,. The ostensible relationship in that single action between the two patents is that two of the four inventors in the '989 action are the same as two of the six inventors in the stayed action. But as the inventive entities are different, that is not enough to convince a NDCA judge to relate even those two actions. In any event, as to the other ten actions, there is no plausible reason why a NDCA judge would relate any of them to the earlier cases, even if and when the stay is lifted in those actions. Thus, judicial economy does not favor transfer.

### B.    PUBLIC FACTORS

Apple has not shown that the public factors favor transfer.

#### 1.    Court Congestion

Apple briefly argues that this factor favors transfer because the time to trial in patent cases here is 876 days whereas in the NDCA it is 833 days. Mot. at 18.  Apple's data is unreliable, however, because it is based upon the ten-year period between 2008-2018. *See* Apple Ex. 17.  According to the most recent Federal Court Management Statistics, for the 12-months

ending September 30, 2018, the median time from filing to trial for civil cases in this District is 18.7 months, as compared with 30.0 months in the NDCA. *See* Ex. EE.  Based upon this more recent and, therefore, more reliable data, this factor weighs against transfer.

### 2.     Local Interest

Apple argues that the NDCA has "strong" local interest in these disputes because Apple is based there and the accused products were designed there. Mot. at 18.  But, Apple makes that argument in virtually every case wherein it requests transfer from Texas to the NDCA. *See*, *e.g. AGIS v. Apple*, 2018 WL 2721826, at *8.  Given Apple's giant presence in Austin, however, the facts here are more akin to those in *MicroUnity Sys. Eng'g, Inc. v. Acer, Inc., et al.*, No. 2:10-cv-91-TJW, 2011 WL 4591917 (E.D. Tex. Sept. 30, 2011).  In that case, the party requesting transfer to the NDCA (Qualcomm, Inc.) was based in San Diego, California where the accused products were allegedly developed but also had a "significant presence" in Austin, Texas and did "a substantial amount of business" business with its suppliers (of which Samsung is also a supplier to Apple) in Texas. *Id.* at *7.  In addition, the plaintiff was based in the NDCA. *Id.* Nonetheless, given the presence and activities of Qualcomm in Texas, this factor was found to be neutral. *Id.* at **7-8.  Thus, as in *MicroUnity*, this factor is, at best, neutral in these cases.

### 3.     Familiarity with the Governing Law

### 4.     Conflicts of Laws

Apple asserts that these factors are neutral. *See* Mot. at 19.  Therefore, neither favors transfer.

## IV.   CONCLUSION

Apple has failed to show the NDCA is "clearly more convenient" for any of the eleven actions. The Court should deny the motion to change venue.  Uniloc submits a proposed Order to that effect.

3140301.v1

Date:  February 15, 2019                Respectfully submitted,

*/s/ Kevin Gannon*
Kevin Gannon
Aaron S. Jacobs
Prince Lobel Tye LLP
One International Place - Suite 3700
Boston, MA 02110
Tel: 617-456-8000
Email: kgannon@princelobel.com
Email: ajacobs@princelobel.com

Edward R. Nelson III
ed@nbafirm.com
Texas State Bar No. 00797142
NELSON BUMGARDNER ALBRITTON PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111

Shawn Latchford
shawn@nbafirm.com
Texas State Bar No. 24066603
NELSON BUMGARDNER LBRITTON P.C.
111 West Tyler Street
Longview, Texas 75601
Tel: (903) 757-8449
Fax: (903) 758-7397

ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Kevin Gannon*